# EXHIBIT C

# RUBIN | POMERLEAU PC

## Attorneys at Law

RECEIVED

2019 *also licensed in Maine 7 A 10: 16

BOSTON U.S.C.I.S.

FILE COPY

JEFFREY B. RUBIN, ESQ.
TODD C. POMERLEAU, ESQ.*

March 6, 2019

VIA HAND DELIVERY

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
Boston Field Office, District #1
15 New Sudbury Street
Boston, MA 02203

**RE: Moncada, Jassmin Abigail (A# 098-974-322)**
   **<u>Response to Notice of Intent to Deny Form I-485 (MSC1891677439)</u>**

To Whom It May Concern:

Please be advised that this office represents the above-named individual (the "Applicant") in her immigration matters. Enclosed please find the following documents in support of Applicant's Response to Notice of Intent to Deny her Form I-485 Application to Register Permanent Residence or Adjust Status, dated February 7, 2019:

1) Notice of Intent to Deny;
2) Brief on Eligibility;
3) American Immigration Lawyers Association Amicus Brief; and
4) Proof of Applicant's Derivative Asylum Beneficiary Designation.

Should you have any questions please contact me directly at this office. Thank you for your attention to this matter.

Sincerely,

Jeffrey B. Rubin, Esq.
JBR/*bp*
Encl.

Three Center Plaza, Suite 400 Boston, MA 02108
Office - 617.367.0077 Fax - 617.367.0071
law@RubinPom.com
www.RubinPom.com

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
*Boston Field Office*
JFK Federal Building
15 New Sudbury St, Rm E-160
Boston, MA 02203



**U.S. Citizenship
and Immigration
Services**

FEB 0 7 2019

Jassmin A. Moncada
228 Vane St
Revere, MA 02151

A098974322
MSC1891677439

### Notice Of Intent to Deny

Dear Jasssmin Abigail Moncada:

Thank you for submitting Form I-485, Application to Register Permanent Residence or Adjust Status, to U.S. Citizenship and Immigration Services (USCIS) under section 245 of the Immigration and Nationality Act (INA).

After a thorough review of your application and supporting documents, we must inform you that we intend to deny your application for the following reason(s).

Generally, to qualify for adjustment under INA 245, an applicant must:

- Be inspected and admitted or paroled into the United States;
- Be eligible to receive an immigrant visa;
- Be admissible to the United States for permanent residence; and
- Have an immigrant visa immediately available at the time the application is filed.

### Statement of Facts and Analysis, Including Ground(s) for Denial

You filed Form I-485 based on being the beneficiary of an immigrant petition.

USCIS received your Form I-485 on September 04, 2018, and on January 24, 2019, you appeared for an interview to determine your eligibility for adjustment of status. During the interview and review of your application with an Immigration Services Officer, you testified that the information on your Form I-485, along with any amendments made during the adjustment interview, and supporting documents were true and correct.

USCIS records establish that you were born in the country of El Salvador on May 02, 1993.

You testified during your interview that you entered the U.S. without being inspected, admitted, or paroled when you were 10 years old. You could not remember the exact date but that it was sometime in 2003 when you were 10 years old. You testified that you stayed in the U.S. for about a year and a half almost two, and then left for El Salvador. You testified that you remember turning 16 years of age in El Salvador, which was in the year 2006.

=10106 BP

You were unlawfully present in the United States for an aggregate period of more than 1 year.

You further testified that when you were 20 years old, in the year 2013, you reentered the U.S. without being inspected, admitted, or paroled.

Therefore, you are inadmissible to the United States. *See* INA 212(a)(9)(C)(i).

On January 29, 2018, you filed Form I-131, Application for Travel Document, requesting to be Paroled-in-Place based on being the spouse of a U.S. military veteran. On that application you did not disclose that you had entered the U.S. unlawfully once before in 2003 and stayed in the U.S. for a year and a half, almost two, in 2006, and that your most recent unlawful entry occurred in 2013.

You were Paroled-in-Place by USCIS on August 03, 2018. That Parole expires on August 21, 2019.

Therefore, it appears that you are inadmissible to the United States. You did not apply for a waiver of your inadmissibility under INA 212(a)(9)(B)(v) while you were outside of the U.S. prior to your unlawful reentry. Also, you cannot apply for consent to reapply under INA 212(a)(9)(C)(ii) while you are in the United States. Matter of Torres-Garcia, 23 I&N Dec. 866 (BIA 2006). You are not qualified to adjust status, and, therefore, USCIS intends to deny your Form I-485. *See* INA 212(a)(9)(C)(i)(I), and 245(a)(2).

Based on a review of the record, USCIS finds that you have not met your burden of proof in demonstrating that your application should be approved. Therefore, USCIS intends to deny your Form I-485.

You may rebut the above-mentioned derogatory information and submit additional evidence in support of the application. You may deliver your evidence to the Boston Field Office. You must respond within thirty (30) days, with three days given by USCIS in order for this letter to be delivered. Failure to respond within the allotted time will result in denial of your application for abandonment, or for the reasons set forth above, or both.

Sincerely,

Michael J. McCleary
Field Office Director
Boston Field Office

atty: Jeffrey B. Rubin, Esq.
cc: file
by: emh

Jeffrey B. Rubin, Esq.
Rubin Pomerleau, P.C.
One Center Plaza, Suite 400
Boston, MA 02108
(617) 367-0077
BBO# 640964

## DEPARTMENT OF HOMELAND SECURITY
## UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES

| | |
|---|---|
| In the Matter of: ) | |
| ) | |
| ) | |
| MONCADA, Jassmin A., ) | File No.: A# 098 974 322 |
| Applicant ) | Receipt No.: MSC1891677439 |
| ) | |
| Response to Notice of Intent to Deny ) | |
| ) | |

## BRIEF IN SUPPORT ELIGIBILITY FOR ADJUSTMENT OF STATUS

The Applicant, Jassmin Abigail Moncada, ("Mrs. Moncada") through counsel, respectfully submits this timely brief in support of her Form I-485 Application Register Permanent Residence of Adjustment of Status (I-485 Application) in response to the Notice of Intent to Deny ("NOID") such application, dated February 7, 2019.

## FACTUAL BACKGROUND

Mrs. Moncada is a twenty-five-year-old native and citizen of El Salvador. On September 25, 2017, she married Johnny Moncada ("Mr. Moncada"), a United States Citizen. Mr. Moncada is a decorated, veteran of the United States Air Force. Before retiring from the Air Force in 2010, Mr. Moncada served as a Senior Airman. In that capacity, from April through September 2009, Mr. Moncada served in an active combat zone in Afghanistan while assisting in Operation Enduring Freedom. During that time Mr.

Moncada endured at least one fatal attack while living on a military base in Bagram, Afghanistan.

Mr. Moncada has received the following awards: Meritorious Unite Award with Oak Leaf Cluster; AF Good Conduct Medal; National Defense Service Medal; Afghanistan Campaign Medal with 1 service Star; Global War on Terrorism Service Medal; Air Force Expeditionary Service Ribbon with Gold Border; AF Training Ribbon; and the NATO Medal (Wear First NATO medal awarded). Mr. Moncada was honorably discharged from the United States Air Force on September 1, 2010. While serving in the Air Force, Mr. Moncada developed a skin condition and tenosynovitis in his wrists, which has placed him on partial disability. He is currently employed by the Commonwealth of Massachusetts as a social worker for the Department of Transitional Assistance. In this capacity, he works to serve low income families by providing them assistance in obtaining means-tested benefits and referring them to different programs to help get them back on their feet, as needed.

Mrs. Moncada is gainfully employed at Bella Cakes in Everett, Massachusetts. She and her husband currently own a home together in Revere, Massachusetts. Mrs. Moncada has paid her income taxes every year that she has worked in the United States and has never been arrested for a crime anywhere in the word.

Mrs. Moncada was born in Nueva Concepcion, El Salvador on May 2, 1993. On December 21, 1993, her father filed a Form I-589, Application for Asylum, Withholding of Removal and Protection Under the Convention Against Torture, listing Mrs. Moncada as a derivative beneficiary. On or about September 5, 2004, Mrs. Moncada's parents brought her to the United States, when she was eleven years old. She remained in the United

States with her parents until approximately 2006, when she and her family returned to El Salvador. It is undisputed that Mrs. Moncada was under the age of eighteen when she departed the United States.

In 2013, Mrs. Moncada's parents again decided to return to the United States. Having nowhere else to go in El Salvador, on or about June 25, 2013, Mrs. Moncada, entered the United States with her family without inspection or admission, when she was just twenty-years-old. She has remained in the United States ever since. Since that time, Mrs. Moncada has created a life here in the United States.

On September 4, 2018, Mrs. Moncada's husband submitted a Form I-130, Petition for Alien Relative on her behalf to the United States Citizenship and Immigration Services ("USCIS"). Based on her husband's military service, Mrs. Moncada also submitted Form I-131, Application for Travel Document requesting parole in place, and an I-485 Application to USCIS. On August 22, 2018, USCIS granted Mrs. Moncada's request for parole in place and on January 25, 2019, USCIS also approved the I-130 Petition. However, on February 7, 2019, USCIS issued a Notice of Intent to Deny Mrs. Moncada's I-485 Application, noting that because she had accrued more than one year of unlawful presence as a minor before re-entering the United States in 2013, she was ineligible to adjust her status to that of a lawful permanent resident, pursuant to section 212(a)(9)(C)(i)(I) of the Immigration and Nationality Act ("INA" or "Act").[1] Specifically, the NOID states that

---

[1] While USCIS also indicates in the NOID that Mrs. Moncada did not disclose her 2013 re-entry into the United States after accruing unlawful presence as a minor in her Form I-131, counsel notes that there is no designated space in the application to make such disclosure. Nor would such facts preclude her from receiving such benefit. *See* Adjudicator's Field Manual ("AFM"), Chapter 21.1(c) (noting the requirements for special parole considerations for spouses of U.S. military personnel, including veterans). Further, as it does not appear that USCIS is alleging any other grounds of inadmissibility other than section 212(a)(9)(C)(i)(I) in the NOID, this response only focusses on why USCIS should not use the time that Mrs. Moncada spent in the United States as a minor against her to find that she is inadmissible under section 212(a)(9)(C)(i)(I) of the Act. *See* 8 C.F.R. § 103.2(b)(8)(iv) (noting that a notice of intent to deny will specify the bases for the

because Mrs. Moncada did not apply for a waiver under INA § 212(a)(9)(B)(v) prior to her unlawful entry, and because she cannot apply for consent to reapply for admission to the United States under INA § 212(a)(9)(C)(ii) while inside the country, she is not qualified to adjust her status. This timely response follows.

## ARGUMENT

### I. USCIS Policy on Unlawful Presence Violates the APA.

The Administrative Procedures Act ("APA") forbids agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In addition, agency policy that is "fundamentally at odds with the manifest [legislative] design" cannot be sustained "simply because it is not 'technically inconsistent' with the statutory language." *Bangor Baptist Church v. Me., Dep't of Educ. & Cultural Servs.*, 549 F. Supp. 1208, 1232 (D. Me. 1982) (quoting *United States v. Vogel Fertilizer Co.*, 455 U.S. 16 (1982)). The APA also sets forth rule-making procedures that agencies must follow before adopting substantive rules. *See* 5 U.S.C. § 553. USCIS's decision to prohibit some noncitizens from pursuing the adjustment process—a prohibition accomplished in this case by USCIS' unlawful interpretation of section 212(a)(9) of the Act—improperly alters these substantive rules without notice-and-comment rulemaking, in violation of the APA. Therefore, USCIS should disregard its policy as it is *ultra vires* to the Act and grant Mrs. Moncada's I-485 Application. *See* 5 U.S.C. §706 (directing courts to hold unlawful and set aside agency action, findings, and conclusions made without observance of the procedure required by law, and that the reviewing court shall compel agency action unlawfully withheld).

---

proposed denial sufficient to give the applicant or petitioner adequate notice and sufficient information to respond).

Here, it is undisputed that the period of time relevant to the adjudication of Mrs. Moncada's I-485 Application occurred between September 4, 2004 until sometime in 2006—all while she was under the age of eighteen. Moreover, throughout the duration of such period Mrs. Moncada was listed as a derivative beneficiary in a bona fide asylum application. Therefore, but for USCIS's erroneous policy, Mrs. Moncada would be deemed admissible because she qualifies for not one, but two of the unlawful presence exceptions listed in section 212(a)(9)(B)(iii) of the Act. Accordingly, based on the arguments contained below, USCIS should declare such policy *ultra vires* to the Act and grant Mrs. Moncada's I-485 Application.

## II. USCIS's Interpretation Unlawful Presence for Purposes of INA § 212(a)(9)(C)(i) is *Ultra Vires* to the Act.

Section 212(a)(9) of the Act is broken up into three different subsections: (A) Aliens Previously Removed; (B) Aliens Unlawfully Present; and (C) Aliens Unlawfully Present After Certain Immigration Violations. Subsection B goes on to define unlawful presence as follows: "an alien is deemed to be unlawfully present in the United States if the alien is present in the United States after the expiration of the period of stay authorized by the Attorney General or is present in the United States without being admitted or paroled." INA § 212(a)(9)(B)(ii). Pertinently, the Act is clear that: (1) "no period of time in which an alien is under 18 years of age shall be taken into account in determining the period of unlawful presence . . ." and (2) "[n]o period of time in which an alien has a bona fide application for asylum pending under section 208 [8 USCS § 1158] shall be taken into

account in determining the period of unlawful presence . . . ." INA § 212(a)(9)(B)(i)(I) - (II).[2]

These grounds of inadmissibility were created through the enactment of Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996. However, despite the significant passage of time, and the incredible penalties these sections of the statute impose, none of the immigration agencies have promulgated any regulations implementing these grounds. Instead, the accrual of unlawful presence for purposes of INA § 212(a)(9)(C) is addressed by two USCIS policy memorandums, which do not have the full force of law, were not subject to the notice and comment period required by the APA and are inconsistent with the plain language of the statute and its clear objectives. *See* INS Memorandum, P. Virtue, "Implementation of Section 212(a)(6)(A) and 212(a)(9) Grounds of Inadmissibility" (Mar. 31, 1997); INS Memorandum, P. Virtue, "Additional Guidance for Implementing Sections 212(a)(6) and 212(a)(9) of the Immigration and Nationality Act" (June 17, 1997); AFM Chapter 40.9.2. Therefore, USCIS should not apply such policy to Mrs. Moncada's case.

### A. USCIS's Interpretation of Unlawful Presence Contradicts the Plain Language of the INA.

The statute provides a single definition of "unlawful presence" that applies with equal force to §§ (a)(9)(B) and (C). This definition includes blanket exceptions for minors

---

[2] A "bona fide asylum application" has been interpreted to mean a "properly-filed asylum application that has a reasonably arguable basis in fact or law and is not frivolous." AFM, Chapter 40.9.2. An application for asylum is considered to be pending "during any administrative or judicial review (including review in Federal court)." *Id*. A denial of an asylum claim, or the abandonment of such application is not determinative of whether the claim was bona fide. *Id*. Similarly, an individual who is included in the principal's asylum application as a derivative beneficiary is considered to be in a period of stay authorized as of the date the principal applicant, and therefore does not accrue unlawful presence during the pendency of such application, unless he or she works without authorization or it is deemed that the application for the derivative individual is not bona fide. *Id*.

and derivative asylum beneficiaries. However, despite the clear intent of Congress, USCIS has determined that the statutory exceptions accompanying the definition of unlawful presence in subsection 212(a)(9)(B), "do not apply to section 212(a)(9)(C)(i)(I) cases." AFM Chapter 40.9.2. Such interpretation is in defiance of the plain text of the statute and should not be applied in this case. *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844, (1984) (agency policy will not be given controlling weight if they are "manifestly contrary to the statute."); *United States v. Zannino*, 895 F.2d 1, 8 (1st Cir. 1990) (noting that the statute's plain language is "the best guide to its meaning.").

Section 212(a)(9) of the Act, sets out a layered approach, where each subsection builds on the previous section. Because the subsections are pieces of the same regulatory approach, the whole section must be read in unison. Further, while section 212(a)(9)(C) of the Act creates a separate ground of inadmissibility, it does not contain a separate definition of unlawful presence. In fact, the only definition of unlawful presence is found in 212(a)(9)(B) of the Act, and thus based on the rules of statutory construction, sections 212(a)(9)(B) and (C) must be read together as Congress clearly intended them to function jointly. *See e.g., Boise Cascade Corp. v. United States EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991) (noting that when Congress uses words more than once in the same statute, it is presumed that those words have the same meaning).

Moreover, while Mrs. Moncada acknowledges that the exception found in INA § 212(a)(9)(B)(iii)(I) and (II) indicate that they apply to "clause (i)" – interpreting such section in isolation is unsound and has been repeatedly rejected by the United States Supreme Court because it such interpretation ignores the structure and context of the whole statute. Indeed, reading the Act in such "a mechanical fashion" would "create obvious

incongruities in the language" and would "destroy one of the major purposes" of the Act. *Lawson v. Suwanee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949). Thus, as the only definition of unlawful presence in the entire Act and implementing regulations is codified at §§ 212(a)(9)(B)(ii) and (iii), the exceptions, should be viewed as exceptions to the definition—not the penalty portions of the statute. *See* AILA Amicus Brief, at 9 (noting that "the definitional and penalty portions of §§ 212(a)(9)(B) and (C) are distinct by design."). Based on this interpretation, USCIS should find that Mrs. Moncada is eligible to adjust her status in the United States, notwithstanding section 212(a)(9)(C) of the Act, because the only presence she accrued prior to her 2006 departure and 2013 re-entry, occurred while she was under the age of eighteen.[3]

**B. USCIS's Interpretation of Unlawful Presence as Applied to Minors Contradicts INA § 212(a)(9)'s Clear Objectives.**

Section 212(a)(9)(C) of the Act has been characterized as an inadmissibility ground intended to punish recidivist immigration violators. *See Matter of Rodarte*, 23 I&N Dec. 905 (BIA 2006) and *Matter of Briones*, 24 I&N Dec. 355 (BIA 2007). "The enactment of these multifarious provisions to expedite the detection, deterrence, and punishment of recidivist immigration violators reflects a clear congressional judgment that such repeat offenses are a matter of special concern and that recidivist immigration violators are more culpable, and less deserving of leniency, than first-time offenders." *Briones*, 24 I&N Dec. at 371; Black's Law Dictionary 1269 (9th Ed.) (defining "recidivist" as an "habitual criminal; a criminal repeater. An incorrigible criminal. One who makes a trade of crime.").

Inherent in this "get-tough-on-immigrants philosophy" is the notion that the

---

[3] Mrs. Moncada further contends that she did not accrue unlawful presence prior to her 2006 departure and 2013 re-entry because she was listed as a derivative beneficiary on her father's asylum application.

recidivist immigrant violator is totally responsible for *all of the actions* leading to his or her INA § 212(a)(9)(C) inadmissibility. However, such philosophy begins to lose its legal—and moral—force when applied to an eleven-year-old girl who had no choice but to enter the United States and live with her family, even if it meant living in the United States without lawful status. "The absurdity of labeling this [eleven-year-old] child as "culpable" for her unlawful presence in the United States or "punishing" her for her subsequent "recidivist" uninspected entry is apparent from the face of this sentence. It cannot be correct, then, that minors are subject to § 212(a)(9)(C)." *See* AILA Amicus Brief, at 11.

Congress clearly did not intend to hold children to the same standard as their adult parents. First, children, like eleven-year-old Mrs. Moncada, do not live independent lives. This is demonstrated by the fact that Mrs. Moncada's parents unilaterally decided to bring her to the United States and that she did not have any say in the matter. Second, children lack the competency to make informed judgments about their immigration status and whether or not they should continue to live in the United States without status. This is true both legally and factually. Thus, the eleven-year-old version of Mrs. Moncada, cannot be classified as a recidivist because she lacked the ability—both cognitively and legally—to form the requisite intent to violate the law.

And, while Mrs. Moncada was over the age of eighteen when she re-entered the country, she should not be held accountable for her parents' prior decisions, unlawful or not. This would be in total contradiction to other portions of the INA which clearly do not permit any type of vicarious inadmissibility liability. *See e.g.,* INA § 212(a)(9)(C)(i)(I) (noting that children are not "punishable" for the decisions made by others to smuggle them to the United States). Therefore, Mrs. Moncada should not be labeled as "incorrigible" and

punished by the full force of the permanent bar when she did not possess the requisite culpability with regards to the accrual of her unlawful presence when she actually accrued it. Accordingly, USCIS should grant her adjustment of status application, because to do otherwise would violate section 212(a)(9)'s clear objectives. *See Rodarte*, 23 I&N Dec. at 909 (noting that the "focus of section 212(a)(9) is on the prevention of recidivist immigration violations").

Moreover, because Mrs. Moncada was a minor and therefore did not possess the requisite culpability when she departed the United States, USCIS should further determine that she is eligible for adjustment of status, notwithstanding section 212(a)(9)(C)(i) of the Act. The Board has been consistently clear that all the potential grounds of inadmissibility created by section 212(a)(9) of the Act are only triggered by the noncitizen's departure from the United States. *See* INA §§ 212(a)(9)(A), (B), and (C).

> The unifying theme of section 212(a)(9) is that all its subparagraphs seek to compound the adverse consequences of immigration violations by making it more difficult for individuals who have left the United States after committing such violations to be lawfully readmitted thereafter. In every subparagraph, Congress has tied the relevant period of inadmissibility (or, where inadmissibility is permanent, the period of waiver ineligibility) to the date when the alien departs the United States, voluntarily or otherwise. We deem it evident that Congress made departure (rather than commencement of unlawful presence) the event that triggers inadmissibility or ineligibility for relief, because it is departure which marks the culmination of the alien's prior immigration violation and which makes the alien a potential recidivist. It is recidivism, and not mere unlawful presence, that section 212(a)(9) is designed to prevent.

*Rodarte*, 23 I&N Dec. at 909. Here, it is undisputed that Mrs. Moncada was still a minor when she engaged in the very action triggering her inadmissibility. Therefore, her culpability at this point is determinative as to whether or not she should be subsequently punished by INA § 212(a)(9)(C)(i) upon her return to the United States. *See id.* Further,

because a minor noncitizen cannot accrue unlawful presence to trigger the first inadmissibility period under § 212(a)(9)(B), similarly, that minor noncitizen cannot trigger § 212(a)(9)(C) if she departs the United States before turning eighteen, because she will never have accrued unlawful presence before departing the United States in the first place.

Accordingly, because Mrs. Moncada departed the United States as a minor, and therefore could not have accrued the requisite unlawful presence period for either section 212(a)(9)(B) or (C) of the Act, USCIS should grant her I-485 Application. Any decision to the contrary, would be *ultra vires* to the Act and in violation of the APA, as it would contradict the plain language of the statute and undermine the very rationale driving the promulgation of section 212(a)(9) of the Act.

### III. USCIS's Interpretation of Unlawful Presence As Applied To A Spouse of a United States Veteran Violates Congress's Clear Intent To Promote Family Unity Within The Military.

In the alternative, USCIS should conclude that Mrs. Moncada is not subject to the permanent bar based on its own articulated policies regarding the unification of military families. Policies regarding family unity and reunification abound in immigration law. For example, § 212(a)(9)(A)(iii) allows an individual who departed under an order of removal to avoid a 10-year bar on admission by obtaining the "consent[]" of the Attorney General. In addition, § 212(a)(9)(B)(v) allows an individual who lived in the United States unlawfully for more than a year to avoid a similar 10-year bar by demonstrating that a denial of admission would cause "extreme hardship" to a U.S. citizen spouse or parent. Recognizing that requiring a noncitizen to await the adjudication of these waivers overseas would create precisely the "extreme hardship" that the waiver of unlawful presence is designed to avoid, the Department's regulations interpret the INA to permit an individual

who requires waivers under INA § 212(a)(9)(A)(iii) and (B)(v) to obtain conditional, advance approval of these waivers before she departs the U.S. to complete the immigrant visa process. *See* 8 C.F.R. §§ 212.2(j) & 212.7(e); Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final Rule, 81 Fed. Reg. 50244, 50245 (July 29, 2016). These Regulations were promulgated with the clear intent of keeping families together, and USCIS's interpretation of the Act's definition of unlawful presence as applied to section 212(a)(9)(C)(i)(I) of the Act is in clear defiance of such policy, especially with regards military families.

USCIS has launched a number of initiatives to assist military members, veterans, and their families to apply for naturalization and other immigration services and benefits. One of these benefits is known as Parole of Spouses, Children and Parents of Active Duty Military Members of the U.S. Armed Forces, the Selected Reserve of the Ready Reserve, and Former Members of the U.S. Armed Forces or Selected Reserve of the Ready Reserve ("Military Parole in Place"). According to a 2013, USCIS Policy Memo:

> Veterans, who have served and sacrificed for our nation, can face stress and anxiety because of the immigration status of their family members in the United States. We as a nation have made a commitment to our veterans, to support and care for them. It is a commitment that begins at enlistment and continues as they become veterans.

USCIS Memo, Parole of Spouses, Children and Parents of Active Duty Members of the U.S. Armed Forces, the Selected Reserve of the Ready Reserve, and Former Members of the U.S. Armed Forces or Selected Reserve of the Ready Reserve and the Effect of Parole on Inadmissibility under Immigration and Nationality Act § 212(a)(6)(A)(i), PM-602-0091, at 2 (Nov. 13, 2013). The Department of Homeland Security, in partnership with other United States agencies, has been clear that it is committed to assisting these veterans

in keeping their spouses and other family members together in the United States throughout the immigration process.

In efforts "to help military dependents secure permanent immigration status in the United States as soon as possible," USCIS invoked it parole authority under section 212(d)(5)(A) of the Act "to minimize periods of family separation, and to facilitate adjustment of status within the United States by immigrants who are the spouses, parents and children of military members." *Id.* In fact, USCIS has gone so far to determine that a recipient of Military Parole in Place is no longer inadmissible under section 212(a)(6)(A)(i) of the Act, despite their prior unlawful entry. *See id.* at 5. Based on this reasoning and in compliance with USCIS's policy in helping "military dependents secure permanent immigration status in the United States as soon as possible," USCIS should conclude by extension that Mrs. Moncada, as a recipient of Military Parole in Place, is not inadmissible under section 212(a)(9)(C) of the Act, despite her 2013 unlawful entry.

The INA does not condemn individuals who live in the United States unlawfully to permanent and/or prolonged separation from their U.S. citizen spouses and children, especially if these spouses are veterans of the United States. For example, in some instances the regulations allow these individuals, if otherwise eligible, to leave the U.S. temporarily and return as lawful permanent residents—if they are granted waivers of applicable inadmissibility grounds under INA § 212(a). Further, the Constitution provides the United States citizen petitioners, including Mrs. Moncada's United States citizen husband, with a liberty interest in living with their spouses in the United States. *See Calderon Jimenez v. Cronen*, 317 F. Supp. 3d 626, 636 (D. Mass. 2018) (noting that "[e]ach day with their families is now particularly precious. Any unjustified loss of liberty for even another day

would be a painful form of irreparable harm to them and to the United States citizens who love them."). USCIS is unlawfully depriving Mrs. Moncada and her veteran spouse of these rights by interpreting the Act in a way that it is violation of the U.S. Constitution, the APA, and USCIS's own articulated policies regarding the unification of military families. Therefore, even if USCIS is not willing to disregard its previous interpretations of unlawful presence as applied to minors and asylum derivatives with regards to section 212(a)(9)(C) of the Act, it should in the very least make an exception for Military Parole in Place recipients, who are the spouses of U.S. military personnel and veterans. Therefore, Mrs. Moncada's I-485 Application should be granted because: (1) she does not require a waiver under INA § 212(a)(9)(B)(v) prior to her unlawful entry because INA § 212(a)(9)(B)(iii) clearly exempts unlawful presence accrued by minors; and (2) based on the foregoing, she does not need consent to reapply for admission to the United States under INA § 212(a)(9)(C)(ii) of the Act.

## CONCLUSION

Accordingly, USCIS should deem Mrs. Moncada admissible to the United States and grant her I-485 Application for Adjustment of Status. Therefore, Mrs. Moncada respectfully requests that her I-485 application be approved.

Respectfully Submitted,
Jassmin Abigail Moncada,
By and through counsel,

Jeffrey B. Rubin, Esq.

Dated: March 6, 2019

NOT DETAINED

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

Board Of Immigration Appeals

-

IN THE MATTER OF



*Respondent.*

-

Appeal from an Immigration Judge decision
entered on February 23, 2011

-

BRIEF OF AMICUS, AMERICAN IMMIGRATION
LAWYERS ASSOCIATION

-

AMERICAN IMMIGRATION
LAWYERS ASSOCATION
1331 G STREET NW, SUITE 300
WASHINGTON DC 20005

*Counsel listed on following page*

AILA InfoNet Doc. No. 11081069.   (Posted 08/10/11)

Attorneys for Amicus Curiae,
American Immigration Lawyers Association

Stephen W Manning
Immigrant Law Group PC
PO Box 40103
Portland OR 97240
(503) 241-0035

Russell Abrutyn
Marshal E. Hyman & Associates, PC
3250 W. Big Beaver, Suite 529
Troy, MI 48084
(248) 643-0642

# Table of Contents

Table of Authorities      iii

Introduction      1

Statement of Interest of Amicus      3

Argument      4

A.     The     Unlawful     Presence     Grounds    of     4
Inadmissibility

B. The best reading of the statute      6

    1.     The Text of § 212(a)(9)      7

    2.     The culpability rationale of § 212(a)(9)(C)      10

    3.     The clear Congressional view is to protect      12
       minors, not punish them.

    4.     Conventional     legal     principles     offer     17
       protection to minors

    5.     Inadmissibility     grounds     involving     21
       competency and autonomy.

Conclusion      22

Certficiate of Service      23

AILA InfoNet Doc. No. 11081069.    (Posted 08/10/11)

# Table of Authorities
## Cases

*Acosta v. Gonzales*, 439 F.3d 550 (CA9 2006).................................. 2

*Chisom v. Roemer*, 501 U.S. 380 (1991)........................................ 21

*Eddings v. Oklahoma*, 455 U.S. 104, 115-16 (1982) ......... 17

*Garfias-Rodriguez v. Holder*, -- F.3d --, 2011 WL 134690 (CA9
    April 11, 2011)................................................................... 2

*Graham v. Florida*, --U.S.--, 130 S. Ct. 2011 (2010)............... 18, 19

*INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987)................................ 9

*J. D. B. v. North Carolina*, 131 S. Ct. 2394 (2011)................. 19, 20

*Johnson v. Ford Motor Co.*, 707 F.2d 189 (5th Cir. 1983)............. 18

*Langham v. Alabama*, 55 Ala. 114 (Ala. 1876) ............................ 18

*Lawson v. Suwanee Fruit & S.S. Co.*, 336 U.S. 198 (1949). ........... 8

*Liu v. Aschroft*, 380 F.3d 307 (7th Cir. 2004) ................................ 16

*Matter of Briones*, 24 I&N Dec. 355 (BIA 2007) ................. 2, 10, 11

*Matter of Devison-Charles*, 22 I&N Dec. 1362 (BIA 2000)............. 13

*Matter of Rodarte*, 23 I&N Dec. 905 (BIA 2006) ............................ 10

*Negusie v. Holder*, 555 U.S. 511, 129 S.Ct. 1159 (2009) ................ 6

*Nunes-Reyes v. Holder*, --- F.3d ----, 2011 WL 2714159 (9th Cir.
    July 14, 2011)................................................................... 2

*Roper v. Simmons*, 543 U.S. 551 (2005)........................................ 19

*Sandoval v. Holder*, 641 F.3d 982 (8th Cir. 2011)......................... 22

*Singh v. Gonzales*, 451 F.3d 400 (6th Cir. 2006) ........................... 21

*Thomas v. United States*, 121 F.2d 905 (D.C. Cir. 1941) .............. 18

*Vermont v. Deyo*, 915 A.2d 249 (Vt. 2006) .................................... 18

## Immigration & Nationality Act

§ 208(a)(2)(E).......................................................................... 13

§ 208(b)(3)(C).......................................................................... 13

§ 212(a)(2)(A)(ii)(I) ................................................................. 13

§ 212(a)(6)(C).......................................................................... 21

§ 212(a)(9)(B)....................................................................passim

§ 212(a)(9)(C)....................................................................passim

§ 240(b)(3).............................................................................. 13

§ 212(a)(9)(B)(i)(II) .................................................................. 5

former-§ 241(a)(1)(B) ............................................................... 5

## Public Laws

Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-652, tit. II, § 383(a) (Sept. 30, 1996) .......................... 20

Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, tit. III, § 301 (Sept. 30,, 1996). .......................... 5

Immigration Act of 1990, § 301, Pub. L. No. 101-649, 104 Stat. 4978 (Nov. 29, 1990) .......................... 13

## Regulations

8 C.F.R. § 1208.4(a)(5)(ii) .......................... 14
8 C.F.R. § 1240.10(c) .......................... 14
8 C.F.R. § 1245.1(e)(2)(vi)(B)(3) .......................... 14
8 C.F.R. § 236.2 .......................... 14
8 C.F.R. § 236.3 .......................... 14
8 C.F.R. § 245.1.(e)(2)(vi)(B)(3) .......................... 14

## Law Reviews and Other Authorities

A. Doyle, Silver Blaze, in *The Complete Sherlock Holmes* (1927) 21

Black's Law Dictionary (9th Ed.) .......................... 11

Marsha L. Levick & Robert G. Schwartz, *Changing the Narrative: Convincing Courts to Distinguish Between Misbehavior and Criminal Conduct in School Referral Cases*, 9 U.D.C.L. Rev. 53 (2007) .......................... 17

Shirley Jackson, *The Lottery and Other Short Stories* (2d Ed. 2005) .......................... 12

## AILA Documents

Michigan AILA CBP Liaison Committee, Response to Question 7 (Nov. 23, 2010), AILA InfoNet Doc. No. 11080850 (posted 08/08/2011) .......................... 2

## Agency Documents

Cable, Department of State, No. 00-State-102274 (May 30, 2000), *published on* AILA InfoNet at Doc. No. 00060202 .......................... 17

Final Text of Settlement Establishing Minimum Standards and Conditions for Housing and Release of Juveniles in INS Custody .......................... 15

ICE Family Residential Standards (2008), *available at* http://www.ice.gov/detention-standards/family-residential/ ..... 15

INS, Juvenile Protocol Manual 2.1.1 (2007); *published on* AILA InfoNet Doc. No. 07111561 (posted Nov. 15, 2007)...................... 16

John Morton, Director, Immigration & Customs Enforcement, *Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens*, June 17, 2011 ..................................................................................................... 15

Memorandum, David Neal, Chief Immigration Judge, EOIR (May 22, 2007), *published on* AILA InfoNet at Doc. No. 07052360.... 16

Memorandum, Yates, Assoc. Dire. Operations, USCIS, HQQPRD 70/6.2 (Apr. 15, 2004), *published on* AILA InfoNet Doc. No. 04060110 ....................................................................................... 16

USCIS Adjudicator's Field Manual, § 40.9.2(b)(2)........................... 7

USCIS Asylum Division, Guidelines for Children's Asylum Claims (2009) ................................................................................................ 15

USCIS, Adjudicator's Field Manual § 40.9.2(b)(3)(B).................... 17

### Miscellanous, United States Code

2 U.S.C. § 7101................................................................................... 14

8 U.S.C. § 1232(a)(5)(D).................................................................... 14

## Introduction

Minors are different. Parents know it. The United States Supreme Court has said it. Scientific evidence proves it. Legislatures all over the world, including the United States Congress, have presumed it for decades. It is such a well-accepted norm that it completely permeates United States domestic law, criminal, civil, and contract. Importantly here, it is also a fixture within immigration law and jurisprudence.

Coming on nearly fifteen years after §§ 212(a)(9)(B) and (C) of the Immigration & Nationality Act were enacted, we continue to lurch along without any harmonizing rule on how unlawful presence should be interpreted to regulate immigration. None of the immigration agencies have yet promulgated any regulations implementing these grounds. Indeed, the agencies themselves are at cross-hairs on implementation. For example, the United States Customs and Border Patrol has refused to follow the guidance from either the Department of State or the United States Citizenship and Immigration Services. *See* Michigan AILA CBP Liaison Committee, Response to Question 7 (Nov. 23, 2010), AILA

InfoNet Doc. No. 11080850 (posted 08/08/2011). The Board's interpretative silence on several recurring and important questions has led to conflicting judicial opinions, *cf. Matter of Briones*, 24 I&N Dec. 355 (BIA 2007), with *Acosta v. Gonzales*, 439 F.3d 550 (CA9 2006).[1]

In this case, the Board is asked to decide whether the inadmissibility ground at § 212(a)(9)(C) of the Act applies to noncitizens who accrued unlawful presence prior to turning 18 years of age. In this brief, AILA explains why the best reading of the statute, in light of its language, its purpose, and Congressional treatment of minors as different than adults for deportability and admissibility purposes, excludes minors from § 212(a)(9)(C)(i)(I). We view these factors as conclusively pointing to the proposition that minor noncitizens, like the one in this case,

---

[1] The Board's delay in this context has spawned a whole new set of questions such as reliance and predictability. *See, e.g., Garfias-Rodriguez v. Holder*, -- F.3d --, 2011 WL 134690 (CA9 April 11, 2011), sua sponte order from chambers directing parties to address "[w]hat effect, if any, does the recent en banc decision in *Nunes-Reyes v. Holder*, --- F.3d ----, 2011 WL 2714159 (9th Cir. July 14, 2011), have on our decision that the BIA's precedential opinion in *Matter of Briones*, 24 I. & N. Dec. 355 (BIA 2007), applies retroactively?" (July 29, 2011).

cannot be subjected to an adult-centric interpretation of the inadmissibility ground at § 212(a)(9)(C)(i)(I). As explained why below, the Board should publish an opinion holding that the inadmissibility bar at § 212(a)(9)(C) does not apply to individuals who would have otherwise accrued unlawful presence but for their status as minors.

## Statement of interest of amicus

The American Immigration Lawyers Association ("AILA") is a national association with more than 11,000 members throughout the United States, including lawyers and law school professors who practice and teach in the field of immigration and nationality law. AILA seeks to advance the administration of law pertaining to immigration, nationality and naturalization; to cultivate the jurisprudence of the immigration laws; and to facilitate the administration of justice and elevate the standard of integrity, honor and courtesy of those appearing in a representative capacity in immigration and naturalization matters. AILA's members practice regularly before the Department of Homeland Security and before the Executive Office

for Immigration Review, as well as before the United States District Courts, Courts of Appeal, and Supreme Court.

## Argument

The Board should adopt the best and most reasonable construction of the statute which excludes minors from the scope of § 212(a)(9)(C). In explaining why the best reading of the statute excludes minors from the operation of § 212(a)(9)(C), AILA articulates three points: (1) the text of § 212(a)(9) plainly authorizes an interpretation excluding minors from its scope; (2) the purpose of § 212(a)(9)(C) is undermined by subjecting minors to its inadmissibility ban; and (3) the Act, regulations, and reasoned agency policy consistently acknowledge that minors are different than adults respecting immigration rules.

We address each issue in turn. We take no position on the merits of the respondent's claim.

## A.   The unlawful presence inadmissibility grounds

Congress added the unlawful presence bars to the Act with the passage of the Illegal Immigration Reform and Immigrant

Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, tit. III, § 301, effective April 1, 1997. Prior to IIRIRA, "unlawful presence" was an unregulated concept; it certainly was not used as a statutory immigration control. *Cf.* former-§ 241(a)(1)(B) of the Act (regulating an unlawful *entry*). With IIRIRA, Congress imposed three discrete consequences on noncitizens who accumulated unlawful presence. Noncitizens who accumulated more than 180 days and less than one year of unlawful presence before departing the United States triggered an inadmissibility period of three years. *See* § 212(a)(9)(B)(i)(I) of the Act. A noncitizen who accumulated more than one year of unlawful presence before departing the United States triggered an inadmissibility period of ten years. *See* § 212(a)(9)(B)(i)(II) of the Act. Noncitizens who accumulated an aggregate of more than one year of unlawful presence and then attempted to reenter or reentered the United States without being admitted became permanently inadmissible. *See* § 212(a)(9)(C)(i)(I) of the Act.

## B.    The best reading of the statute.

The best reading of the statute, either as a plain language interpretation or as a policy interpretation for an ambiguous statute, *Negusie v. Holder*, 555 U.S. 511, 129 S.Ct. 1159, 1164 (2009), resolves the following hypothetical the same way:

> A child, age 3, is smuggled into the United States to be with his parents. The child lives in the United States with his parents for four years, is taken back to his home country for a short period when he is 7 years old, and then smuggled back into the United States a few months later. Now, at the age of 15, he seeks an immigrant visa based on an approved relative petition filed by a parent.[2]

No one would dispute that, in this example, § 212(a)(9)(B)(i) is not triggered because our hypothetical applicant was under the age of 18 at all times. How, though, should § 212(a)(9)(C)(i)(I) be interpreted with respect to this hypothetical?[3]

---

[2] Regretfully, there is nothing make-believe in this hypothetical because the facts are drawn from a real case. *See* Email from Tori Alvarenga-Watkins, St. Francis Cabrini For Immigrant Legal Assistance, to Stephen Manning (Aug. 3, 2011) on file with AILA. It is one of the stories collected by AILA through its case

[3] Because it makes no difference to the analysis here whether the statute is ambiguous or not, we do not address the issue.

## 1. The Text of § 212(a)(9)

The statute, § 212(a)(9), sets out a layered regulatory approach. Each section builds on the previous section. Because the subsections are pieces of the same regulatory approach, the whole section must be read in unison.

Because § 212(a)(9)(B)(iii)(I) says that it applies to "clause (i)" – that is, § 212(a)(9)(B)(i) – one might be lead to believe that this means that it *only* applies to § 212(a)(9)(B)(i). For example, the Immigration Judge and DHS counsel take that position in this case. *See also*, USCIS Adjudicator's Field Manual, § 40.9.2(b)(2) (same). But that style of interpretation is unsound and has been repeatedly rejected by the United States Supreme Court because it ignores the structure and context of the whole statute. Indeed, to read the statute in such "a mechanical fashion" would "create obvious incongruities in the language" and would "destroy one of the major purposes" of the statute. *Lawson v. Suwanee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949). The structure of § 212(a)(9)(B) provides several indicia that Congress meant for the minority exception to apply to § 212(a)(9)(C) as well.

First, the definitional and penalty portions of §§ 212(a)(9)(B) and (C) are distinct by design. Sections 212(a)(9)(B)(i) and (C)(i) provide for an inadmissibility penalty triggered by unlawful presence. The definition of unlawful presence is codified at §§ 212(a)(9)(B)(ii) and (iii). The exceptions at § (B)(iii) are exceptions to the definition, *not* the penalty portions of the statute. And this distinction makes all the difference in the statute's interpretation.

Second, the operation of the penalty portions of §§ 212(a)(9)(B) and (C) indicate that the definition of unlawful presence is comprised of both §§ (B)(ii) and (iii). Section 212(a)(9)(B)(i)(II) imposes a ten-year inadmissibility period on an adult noncitizen who departs the United States after accruing more than one year of unlawful presence during any single discrete stay. Section 212(a)(9)(C)(i)(I) imposes a permanent inadmissibility period on an adult noncitizen who aggregates more than one year of unlawful presence prior to an unadmitted entry. If a minor noncitizen cannot accrue unlawful presence to trigger the first inadmissibility period under § 212(a)(9)(B), then

AILA InfoNet Doc. No. 11081069.  (Posted 08/10/11)

that minor noncitizen cannot trigger § 212(a)(9)(C) because he or she will not have any unlawful presence when he or she departed after single or subsequent stay.

Third, the penalty portions of the statute are meant to work in harmony, not in conflict. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 466 n.30 (1987). Notably, the text of § 212(a)(9)(B)(i) aligns nearly perfectly with § 212(a)(9)(C)(i)(I). Read in harmony, § 212(a)(9)(C)(i)(I) was Congress's effort to regulate the noncitizen immigration violators who, because of their short unlawful stays, would escape regulation under § (9)(B). Section (9)(C) is not an additional regulatory control, rather it is meant to fill a gap in the regulatory scheme.[4]

The statute provides a single definition of "unlawful presence" that applies with equal force to §§ (a)(9)(B) and (C). This definition includes blanket exceptions for minors. Minors do not accrue unlawful presence and cannot

---

[4] Section 212(a)(9)(B)(iv) is part of the penalty portion of the statute. It is not an exception to the definition of unlawful presence. It merely stops the running of the unlawful presence clock while an application for a change of status or an extension of status is pending.

trigger the permanent bar at § 212(a)(9)(C)(i)(I) of the Act.

## 2. The culpability rationale of § 212(a)(9)(C)

Board Member Pauley, writing for the Board in both *Matter of Rodarte*, 23 I&N Dec. 905 (BIA 2006) and *Matter of Briones*, 24 I&N Dec. 355 (BIA 2007), characterized § 212(a)(9)(C) as an inadmissibility ground intended to punish recidivist immigration violators. In strongly drafted language describing the punitive purpose, a precedent for which we were unable to find among the Board's published decisions, Board Member Pauley explained that § 212(a)(9)(C) is "concerned with punishing and preventing recidivist immigration violations[,]" *Matter of Briones*, 24 I&N Dec. at 366, and that the focus "is recidivism, and not mere unlawful presence, that section 212(a)(9) is designed to prevent[,]" *Matter of Rodarte*, 23 I&N Dec. at 909. His opinions looked broadly at Congress's immigration legislation in general to finely hone the sharp point of § 212(a)(9)(C) as embodying special punishment for its violators. "The enactment of these multifarious provisions to expedite the detection, deterrence, and punishment of recidivist immigration violators reflects a clear

congressional judgment that such repeat offenses are a matter of special concern and that recidivist immigration violators are more culpable, and less deserving of leniency, than first-time offenders." *Matter of Briones*, 24 I&N Dec. at 371; Black's Law Dictionary 1269 (9th Ed.) (defining "recidivist" as an "habitual criminal; a criminal repeater. An incorrigible criminal. One who makes a trade of crime.").

This get-tough-on-immigrants philosophy loses its legal – and moral – power when applied to our hypothetical. The absurdity of labeling a 3-year old child "culpable" for his unlawful presence in the United States or "punishing" a 7-year old for his "recidivist" uninspected entries is apparent from the face of this sentence. It cannot be correct, then, that minors are subject to § 212(a)(9)(C). First, minors, like the minor in our example, do not live autonomous lives. Second, minors lack the competency to make judgments about their status. This is true legally and factually. In our hypothetical, the child applicant cannot be a recidivist because he lacks the ability - both cognitively and legally - to form the requisite intent to violate the law. We cannot

label the child as "incorrigible". And, there is nothing in the statute that would permit vicarious inadmissibility liability: the child is not "punishable" for the decisions made by others to smuggle him to the United States. *See* § 212(a)(9)(C)(i)(I) (applies only to *the* alien seeking admission).

Even the most extreme rule-based regimes recognize that children are innocent actors. *E.g.*, Shirley Jackson, *The Lottery and Other Short Stories* (2d Ed. 2005) (exempting children who are at least younger than 17 from stoning punishment). The best reading of the statute would avoid this absurdity.

### 3. The clear Congressional view is to protect minors, not punish them.

There are "multifarious" immigration enactments, decisions, and guidance memoranda that present a clear view that minors are to be protected, not "punished". Congress has placed particular emphasis on protecting minors throughout the INA in accord with conventional legal principles. For example, § 208(a)(2)(E) of the Act precludes the use of safe third country or time limitations to bar an asylum application for certain minors.

Section 208(b)(3)(C) provides for initial asylum jurisdiction with the asylum office for certain minors instead of removal proceedings. Section 301 of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 (Nov. 29, 1990), prevents the detention and deportation of minors who are unlawfully present in the United States with close family ties. Congress has directed that "the Attorney General shall prescribe safeguards to protect the rights and privileges" of incompetent aliens, such as minors, in removal proceedings. *See* § 240(b)(3) of the Act. Indeed, Congress has spared minors from inadmissibility even for their *convicted* criminal conduct. *See* § 212(a)(2)(A)(ii)(I) of the Act.

The Board has recognized that judgments in juvenile delinquency proceedings are not convictions for immigration purposes. *Matter of Devison-Charles*, 22 I&N Dec. 1362 (BIA 2000). An asylum applicant's status as a minor can be an "extraordinary circumstance" excusing noncompliance with the one-year deadline for applying for asylum. 8 C.F.R. § 1208.4(a)(5)(ii). Immigration Judges cannot accept an admission from an unrepresented minor respondent. 8 C.F.R. §

1240.10(c). There are special rules for serving Notices to Appear on children. 8 C.F.R. § 236.2. Certain minor children, unlike adults, may benefit from voluntary departure free of charge. 8 U.S.C. § 1232(a)(5)(D). Also unlike most adults, an alien child can be released from detention without bond. 8 C.F.R. § 236.3. Certain minors are not subject to numerous grounds of inadmissibility (including several significant grounds such as public charge, entry without inspection, and false claim of citizenship), a policy decision rooted in the inherent vulnerability of minors. *See* 2 U.S.C. § 7101; 8 C.F.R. §§ 245.1.(e)(2)(vi)(B)(3); 1245.1(e)(2)(vi)(B)(3).

Immigration enforcement agencies also maintain various discretionary policies providing added protection for minors, a trend that has been advancing in recent years. A recent ICE memorandum on prosecutorial discretion instructs agency personnel to consider a person's entrance into the United States at a young age as a factor weighing against enforcement actions. John Morton, Director, Immigration & Customs Enforcement, *Exercising Prosecutorial Discretion Consistent with the Civil*

*Immigration Enforcement Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens*, June 17, 2011, at 4. The memorandum explains that "special consideration [be] given to minors" before the decision to commence an enforcement action. *Id* at 10. Immigration officials also must abide by special standards when detaining juveniles. *See* ICE Family Residential Standards (2008), *available at* http://www.ice.gov/detention-standards/family-residential/; Final Text of Settlement Establishing Minimum Standards and Conditions for Housing and Release of Juveniles in INS Custody, *available at* http://centerforhumanrights.org/children/Document.2004-06-18.8124043749. When assessing child asylum applicants, USCIS guidelines instruct adjudicators to view the minor as "a child first and an asylum-seeker second." USCIS Asylum Division, Guidelines for Children's Asylum Claims 13 (2009). The guidelines emphasize that the asylum officer should consider numerous factors of development - cognitive and emotional among others - when adjudicating the child's case. *Id; see also Liu v. Aschroft*, 380 F.3d 307, 314 (7th Cir. 2004) ("[A]ge can be a critical

factor in the adjudication of asylum claims."). This example is not unique. The Juvenile Protocol Manual of the former INS explicitly instructs that juveniles should not be charged with inadmissibility under § 212(a)(6)(C) unless it is clear that they fully understood that they were committing fraud. INS, Juvenile Protocol Manual 2.1.1 (2007); *published on* AILA InfoNet Doc. No. 07111561 (posted Nov. 15, 2007). Additionally, EOIR maintains separate guidelines for proceedings involving unaccompanied minor children, and ICE can decide to parole an individual merely for being a juvenile. Memorandum, David Neal, Chief Immigration Judge, EOIR (May 22, 2007), *published on* AILA InfoNet at Doc. No. 07052360. Finally, juveniles are exempt from the "reasonable request for assistance" requirement for a T Visa. Memorandum, Yates, Assoc. Dire. Operations, USCIS, HQQPRD 70/6.2 (Apr. 15, 2004), *published on* AILA InfoNet Doc. No. 04060110.

As a matter of policy, the U.S. Citizenship and Immigration Services and the Department of State have both promulgated policies to expand upon the statutory tolling provisions. USCIS, Adjudicator's Field Manual § 40.9.2(b)(3)(B);

Cable, Department of State, No. 00-State-102274 (May 30, 2000), *published on* AILA InfoNet at Doc. No. 00060202. Consequently, it is clearly inscribed in immigration jurisprudence that minors will be treated differently than adults.

### 4. Conventional legal principles offer protection to minors

Congress's special treatment of minors and the mirror approach of the immigration agencies accord with conventional legal principles. Our nation's legal framework generally aims to protect minors: courts are cautious in meting out punishment because of a minor's inability to appreciate the wrongfulness of his actions, his inability to reason as an adult, and the state's *parens patriae* role. *See, e.g., Eddings v. Oklahoma*, 455 U.S. 104, 115-16 (1982); Marsha L. Levick & Robert G. Schwartz, *Changing the Narrative: Convincing Courts to Distinguish Between Misbehavior and Criminal Conduct in School Referral Cases*, 9 U.D.C.L. Rev. 53, 86 (2007). This principle guides society's decision to deem minors as incapable of formulating the requisite intent in a variety of contexts: juvenile delinquency proceedings, for example,

do not aim to find criminal culpability or guilt because minors generally do not have the legal capacity to establish a culpable mental state. *See, e.g., Johnson v. Ford Motor Co.*, 707 F.2d 189, 194 (5th Cir. 1983) (holding that a minor has no legal capacity); *Thomas v. United States*, 121 F.2d 905 (D.C. Cir. 1941) (explaining that rehabilitation and not "conviction or punishment for a crime" is the focus of juvenile delinquency proceedings). Indeed, the common law has long reasoned that minors do not have the legal capacity to willfully consent to a variety of legal activities, such as entering into a contract, consenting to a sexual activity, or marrying before a certain age. *See, e.g., Vermont v. Deyo*, 915 A.2d 249, 254 (Vt. 2006); *Needham v. Needham*, 33 S.E. 2d 288, 290 (Va. 1945); *Langham v. Alabama*, 55 Ala. 114 (Ala. 1876).

The United States Supreme Court has definitively noted that minors are different biologically and, therefore, legally, when ascertaining culpability. *See Graham v. Florida*, --U.S.--, 130 S. Ct. 2011 (2010) (holding life imprisonment without parole is unconstitutional for juvenile offenders who did not commit

homicide); *Roper v. Simmons*, 543 U.S. 551 (2005) (holding capital punishment is unconstitutional for juvenile offenders). *Roper* explains that adolescents maintain particular developmental handicaps, broadly apparent in three categories: a lack of maturity; acute vulnerability to outside influences, such as peer pressure; and lack of cognitive and personality development. *Roper*, 543 U.S. at 569. *Graham* recognizes this truth as well. In *Graham*, the Court concluded that juveniles have a significantly diminished sense of moral culpability. *See* 130 S. Ct. at 2027.

The Supreme Court recently recognized that a child's age is a key factor in the *Miranda* custody analysis. *J. D. B. v. North Carolina*, 131 S. Ct. 2394 (2011). A child's age is far "more than a chronological fact." *Id.* at 2403. It is a fact that "generates commonsense conclusions about behavior and perception." *Id.* Children are generally less mature than adults and they often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them. *Id.* For their own protection, children are limited in their ability to alienate property, enter into a binding contract, or even

marry. *Id.* at 2403-04. Children even have a different "reasonable person" standard. *Id.* at 2404.

None of this is to say that Congress cannot create inadmissibility grounds applicable to minors, even morally silly ones. Congress, within its constitutional constraints, can generally fashion exclusionary rules targeted at minors. But Congress generally speaks in an unmistakable manner when legislating against convention. For example, Congress drafted explicitly clear language to exclude minors who committed violent offenses from special deportation protection. *See* § 383(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-652 (Sept. 30, 1996) (excluding violent juveniles from the Family Unity program at § 301 of the Immigration Act of 1990). In this regard, the absence of a particular clause *subjecting* minors to § 212(a)(9)(C) is particularly persuasive in holding that Congress intended minors to be exempt from its reach. "Congress' silence in this regard can be likened to the dog that did not bark." *Chisom v. Roemer*, 501 U.S. 380, 396 n.23 (1991) (citing to A. Doyle, Silver Blaze, in *The*

*Complete Sherlock Holmes* 335 (1927)).

5.   **Inadmissibility grounds involving competency and autonomy.**

The lack of a direct reference to § 212(a)(9)(C) within the minors provision at § 212(a)(9)(B)(iii) means very little because the general view is that when competency and autonomy are required to take an action that creates deportation liability (such as repeated uninspected entries or making false statements), minors are not judged like adults.  Section § 212(a)(6)(C) presents such an example.  Although the statute does not contain a specific intent or age provision, the courts have refused to subject children to this permanent bar because of decisions made by their parents.  *Singh v. Gonzales,* 451 F.3d 400, 405-10 (6th Cir. 2006).  While minors are subject to the general entry and maintenance of status rules, they lack the capacity and ability to engage in fraudulent conduct.  *Id.*  Imputing a parent's fraud to a child will not meaningfully deter either the parent or the child.  *Id.*

Likewise, in *Sandoval v. Holder,* the Eighth Circuit

remanded to allow the Board to address whether children can trigger the permanent bar associated with false claims to U.S. citizenship. 641 F.3d 982 (8th Cir. 2011). While the false claim to citizenship statute contains a limited exception for certain children, § 212(a)(6)(C)(ii)(II) of the Act, the court acknowledged that it would be reasonable to excuse all or most minors from this harsh provision. 641 F.3d at 987-88. In fact, the Attorney General conceded as much at oral argument. *Id.* at 987.

## Conclusion

The best reading of § 212(a)(9)(C) includes the minority provision because immigration law consistently treats minors differently than adults and minors cannot be "culpable" in the same way that adults are when adjudicating immigration law violations. Under the best reading of the statute, the minor in our hypothetical is not inadmissible under § 212(a)(9)(C)(i)(I).

Respectfully submitted,

_____

Stephen W. Manning
Russell Abrutyn

American Immigration Lawyers Association
*Attorneys for Amicus*

## Certificate of Service

I, Stephen W Manning, certify that on August 9, 2011, I served a true and correct copy of the attached brief on the parties below by first class regular mail.

Sarah L Doll
Lau & Choi, PC
1930 Sherman Street
Denver CO 80203

Geoffrey D Reiman
Assistant Chief Counsel
US Immigration & Customs Enforcement
12445 East Caley Avenue
Centennial CO 80111-6432

_____

Stephen W Manning

## THE UNITED STATES OF AMERICA

| Fingerprint Notification | | | NOTICE DATE<br>June 30, 2005 |
|---|---|---|---|
| CASE TYPE<br>I589    Application For Asylum | | | USCIS A#<br>A 098 974 322 |
| RECEIPT NUMBER<br>ZNK0500102110 | RECEIVED DATE<br>December 21, 1993 | PRIORITY DATE<br>December 21, 1993 | PAGE<br>1 of 1 |

APPLICANT NAME AND MAILING ADDRESS
JASSMIN ABIGAIL LEMUS MOLINA
11 BELMONT ST APT#3
EVERETT MA 02149



You have been scheduled to appear at the below CIS Application Support Center (ASC) to be fingerprinted and photographed (biometrics collection) during the 14-day period specified below. Completion of background identity and security checks is required in order to process your application.

| Address | 14-Day Period | Hours of Operation<br>CLOSED ON FEDERAL HOLIDAYS |
|---|---|---|
| INS BOSTON<br>170 PORTLAND STREET BIOMETRICS PROCESSING<br>BOSTON MA 02114 | 07/03/2005<br>to<br>07/17/2005 | Sun, Mon  Closed<br>Tues-Sat 8am-4pm |

ASC SITE CODE: *KBD*
BIOMETRICS QA REVIEW BY: *[signature]* ON 7-5-5
TCNFRINTS QA REVIEW BY: *[signature]* ON

Failure to appear as scheduled for fingerprinting and biometrics collection during the 14-Day period may delay eligibility for work authorization and/or result in an asylum officer dismissing your asylum application, and/or referring it to an Immigration Judge.

When you appear for fingerprinting and biometrics collection, you MUST BRING THIS LETTER. Even if you are scheduled at the same time as your family members, each individual must bring his or her own notice. If you do not bring this letter, you will not be able to have your fingerprints taken. This may cause a delay in the processing of your application and your eligibility for work authorization. You should also bring photo identification such as a passport, valid driver's license, national ID, military ID, State-issued photo ID, or CIS-issued photo ID. If you do not have any photo identification, please expect a minor delay, as you will need to be interviewed by a CIS officer regarding your identity. Note: Asylum applicants are not required to present identification documents in order to have fingerprints and biometrics collected.

Please note that the staff at the ASC will not be able to answer any questions about the status of your application. We appreciate your patience during the process.

Pursuant to Section 265 of the Immigration and Nationality Act, you are required to notify the CIS, in writing, of any address changes, within 10 days of such change. If you were placed in removal proceedings before an Immigration Judge, you are also required to notify the Immigration Court having jurisdiction over your case of any change of address within 5 days of such change, on Form EOIR-33. Include your name, signature, address, and CIS A# on any written notice of change of address. The CIS will use the last address you provided for all correspondence, and you are responsible for the contents of all CIS correspondence sent to that address. Failure to provide your current address as required may result in dismissal or referral of your asylum application, institution of removal proceedings, the entry of a removal order in your absence if you fail to appear for a hearing before an immigration judge, and removal from the United States. If you have any questions or comments regarding the status of your application, please contact the office with jurisdiction over your application.

| If you have any questions regarding this notice, please call 1-800-375-5283. | APPLICANT COPY |
|---|---|



UNITED STATES OF AMERICA

| RECEIPT NUMBER<br>EAC-05-150-52038 | CASE TYPE I765<br>APPLICATION FOR EMPLOYMENT AUTHORIZATION |
| --- | --- |

| RECEIVED DATE<br>April 29, 2005 | PRIORITY DATE | APPLICANT<br>LEMUS MOLINA, JASSMIN A. |
| --- | --- | --- |

| NOTICE DATE<br>May 3, 2005 | PAGE<br>1 of 1 | |
| --- | --- | --- |

| JASSMIN A. LEMUS MOLINA<br>11 BELMONT STREET 3<br>EVERETT MA 02149 | Notice Type: Receipt Notice<br><br>Amount received: $ 175.00<br><br>Class requested: C08 |
| --- | --- |

**Receipt notice** - If any of the above information is incorrect, call customer service immediately.

**Processing time** - Processing times vary by kind of case.
- You can check our current processing time for this kind of case on our website at uscis.gov.
- On our website you can also sign up to get free e-mail updates as we complete key processing steps on this case.
- Most of the time your case is pending the processing status will not change because we will be working on others filed earlier.
- We will notify you by mail when we make a decision on this case, or if we need something from you. If you move while this case is pending, call customer service when you move.
- Processing times can change. If you don't get a decision or update from us within our current processing time, check our website or call for an update.

If you have questions, check our website or call customer service. Please save this notice, and have it with you if you contact us about this case.

**Notice to all customers with a pending I-130 petition** - USCIS is now processing Form I-130, Petition for Alien Relative, as a visa number becomes available. Filing and approval of an I-130 relative petition is only the first step in helping a relative immigrate to the United States. Eligible family members must wait until there is a visa number available before they can apply for an immigrant visa or adjustment of status to a lawful permanent resident. This process will allow USCIS to concentrate resources first on cases where visas are actually available. This process should not delay the ability of one's relative to apply for an immigrant visa or adjustment of status. Refer to www.state.gov/travel <http://www.state.gov/travel> to determine current visa availability dates. For more information, please visit our website at www.uscis.gov or contact us at 1-800-375-5283.

Always remember to call customer service if you move while your case is pending. If you have a pending I-130 relative petition, also call customer service if you should decide to withdraw your petition or if you become a U.S. citizen.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
IMMIGRATION & NATURALIZATION SERVICE
VERMONT SERVICE CENTER
75 LOWER WELDEN STREET
SAINT ALBANS VT 05479-0001
Customer Service Telephone: (800) 375-5283



# I-797C, Notice of Action

UNITED STATES OF AMERICA

| Fingerprint Notification | | | NOTICE DATE<br>June 21, 2006 |
|---|---|---|---|
| CASE TYPE<br>I589    Application For Asylum | | | USCIS A#<br>A 098 974 322 |
| RECEIPT NUMBER<br>ZNK0500102110 | RECEIVED DATE<br>December 21, 1993 | PRIORITY DATE<br>December 21, 1993 | PAGE<br>1 of 1 |

APPLICANT NAME AND MAILING ADDRESS
JASSMIN ABIGAIL LEMUS MOLINA
126 ESSEX STREET #1
MALDEN MA 02148



You have been scheduled to appear at the below CIS Application Support Center (ASC) to be fingerprinted and photographed (biometrics collection) during the 14-day period specified below. Completion of background identity and security checks is required in order to process your application.

| Address | 14-Day Period | Hours of Operation<br>CLOSED ON FEDERAL HOLIDAYS |
|---|---|---|
| CIS BOSTON<br>170 PORTLAND STREET<br>BOSTON MA 02114 | 06/24/2006<br>to<br>07/08/2006 | Sun. Mon  Closed<br>Tues-Sat 8am-4pm |

Failure to appear as scheduled for fingerprinting and biometrics collection during the 14-Day period may delay eligibility for work authorization and/or result in an asylum officer dismissing your asylum application, and/or referring it to an Immigration Judge.

When you appear for fingerprinting and biometrics collection, you MUST BRING THIS LETTER. Even if you are scheduled at the same time as your family members, each individual must bring his or her own notice. If you do not bring this letter, you will not be able to have your fingerprints taken. This may cause a delay in the processing of your application and your eligibility for work authorization. You should also bring photo identification such as a passport, valid driver's license, national ID, military ID, State-issued photo ID, or CIS-issued photo ID. If you do not have any photo identification, please expect a minor delay, as you will need to be interviewed by a CIS officer regarding your identity. Note: Asylum applicants are not required to present identification documents in order to have fingerprints and biometrics collected.

Please note that the staff at the ASC will not be able to answer any questions about the status of your application. We appreciate your patience during the process.

Pursuant to Section 265 of the Immigration and Nationality Act, you are required to notify the CIS, in writing, of any address changes, within 10 days of such change. If you were placed in removal proceedings before an Immigration Judge, you are also required to notify the Immigration Court having jurisdiction over your case of any change of address within 5 days of such change, on Form EOIR-33. Include your name, signature, address, and CIS A# on any written notice of change of address. The CIS will use the last address you provided for all correspondence, and you are responsible for the contents of all CIS correspondence sent to that address. Failure to provide your current address as required may result in dismissal or referral of your asylum application, institution of removal proceedings, the entry of a removal order in your absence if you fail to appear for a hearing before an immigration judge, and removal from the United States. If you have any questions or comments regarding the status of your application, please contact the office with jurisdiction over your application.

| If you have any questions regarding this notice, please call 1-800-375-5283. | APPLICANT COPY |
|---|---|
| |  |

Department of Homeland Security
U.S. Citizenship and Immigration Services

# I-797C, Notice of Action

## THE UNITED STATES OF AMERICA

| RECEIPT NUMBER<br>EAC-06-185-51824 | | CASE TYPE I765<br>APPLICATION FOR EMPLOYMENT AUTHORIZATION |
|---|---|---|
| RECEIVED DATE<br>May 30, 2006 | PRIORITY DATE | APPLICANT: A098 974 322<br>LEMUS MOLINA, JASSMIN A. |
| NOTICE DATE<br>June 8, 2006 | PAGE<br>1 of 1 | |

JASSMIN A. LEMUS MOLINA
126 ESSEX ST 1
MALDEN MA 02148

Notice Type: Receipt Notice

Amount received: $ 180.00

Class requested: C08

Receipt notice - If any of the above information is incorrect, call customer service immediately.

Processing time - Processing times vary by kind of case.
- You can check our current processing time for this kind of case on our website at uscis.gov.
- On our website you can also sign up to get free e-mail updates as we complete key processing steps on this case.
- Most of the time your case is pending the processing status will not change because we will be working on others filed earlier.
- We will notify you by mail when we make a decision on this case, or if we need something from you.
- If you move while this case is pending, call customer service when you move.
- Processing times can change. If you don't get a decision or update from us within our current processing time, check our website or call for an update.

If you have questions, check our website or call customer service. Please save this notice, and have it with you if you contact us about this case.

Notice to all customers with a pending I-130 petition - USCIS is now processing Form I-130, Petition for Alien Relative, as a visa number becomes available. Filing and approval of an I-130 relative petition is only the first step in helping a relative immigrate to the United States. Eligible family members must wait until there is a visa number available before they can apply for an immigrant visa or adjustment of status to a lawful permanent resident. This process will allow USCIS to concentrate resources first on cases where visas are actually available. This process should not delay the ability of one's relative to apply for an immigrant visa or adjustment of status. Refer to www.state.gov/travel <http://www.state.gov/travel> to determine current visa availability dates. For more information, please visit our website at www.uscis.gov or contact us at 1-800-375-5283.

If this receipt is for an I-485, or I-698 application
USCIS WILL SCHEDULE YOUR BIOMETRICS APPOINTMENT. You will be receiving a biometrics appointment notice with a specific time, date and place where you will have your fingerprints and/or photos taken. You MUST wait for your biometrics appointment notice prior to going to the ASC for biometrics processing. This I-797 receipt notice is NOT your biometrics appointment notice and should not be taken to an ASC for biometrics processing.

WHAT TO BRING TO YOUR BIOMETRICS APPOINTMENT-
Please bring your biometrics appointment letter (with specific time, date and place where you will have your fingerprints and/or photo taken) AND your photo identification to your biometrics appointment.
Acceptable kinds of photo identification are:
- a passport or national photo identification issued by your country,
- a drivers license,
- a military photo identification, or
- a state - issued photo identification card.

Always remember to call customer service if you move while your case is pending. If you have a pending I-130 relative petition, also call customer service if you should decide to withdraw your petition or if you become a U.S. citizen.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
IMMIGRATION & NATURALIZATION SERVICE
VERMONT SERVICE CENTER
75 LOWER WELDEN STREET
SAINT ALBANS VT 05479-0001
Customer Service Telephone: (800) 375-5283



Form I-797C (Rev. 01/31/05) N

# IMPORTANT INFORMATION – SAVE THIS MAILER

Use this section to speed your application for an extension or replacement card (see below).
Do Not Bend or Fold This Cut-off Section.

LEMUS MOLINA, JASSMIN A
11 BELMONT STREET 3
EVERETT, MA 02149

A# 098-974-322

✂ (Do not Bend or Fold This Cut-off Section)

Form I-797D (Rev.9-30-04)

**U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. Citizenship and Immigration Services**
**EMPLOYMENT AUTHORIZATION CARD**
The person identified is authorized to work in the U.S. for the validity of this card.
NAME LEMUS MOLINA, JASSMIN A
A# 098-974-322
CARD# EAC0618551824
Birthdate
Sex F
fingerprint not available
NOT VALID FOR REENTRY TO U.S.
VALID FROM 06/19/06 EXPIRES 06/18/07

USCIS has a guide for new Permanent Residents called *Welcome to the United States: A Guide for New Immigrants.* It has important information about your rights and responsibilities. The guide is available in English and 10 other languages at **http://www.uscis.gov**.

## Your Application Has Been Approved.
Here is your new card. The expiration date is shown on the front.

## Please Check Your Card to Verify That the Information Is Correct.
If you find an error on it, please call us at the telephone number provided below.

## Please Protect Your Card.

## Please Read the Back of This Notice.
It has important information. We also recommend that you keep this notice for your records.

If you ever have questions about immigration benefits and procedures, or wish to have an application mailed to you, please call our USCIS National Customer Service Center at **1-800-375-5283**, or check our website at **http://www.uscis.gov**.

75 Lower Welden Street
St. Albans, VT 05479

USCIS Vermont Service Center

Phone Number 1-800-375-5283

Date 06/06/05

A# 098-974-322

Receipt # EAC0515052038

LEMUS MOLINA, JASSMIN A
11 BELMONT STREET 3
EVERETT, MA 02149



U.S. Citizenship and Immigration Services

ECURITY

U.S. DEPARTMENT OF HOMELAND SECURITY
PAROLED
170327
Until November 22, 20[illegible]
Purpose: CP
12/05/19 BOS MMP
(Date) (Location) (Port)
U.S. DEPARTMENT OF HOMELAND

18. Family Name
MONCADA

19. First (Given) Name
JASSMIN

20. Birth Date (DD
0 2 0 [illegible]

21. Country of Citizenship
EL SALVADOR

See Other Side